Ashburn, J.
The controversy arises upon the distribution of moneys arising on a judicial sale made on the 14th day of June, 1873, and confirmed on June 30, 1873.
On the 30th day of December, 1873, after the term of court at which the sale was confirmed, a motion was filed by the purchasers, asking for an order directing the master, who had sold the land, to pay the taxes for the year 1873, out of the proceeds of the sale, assigning as a reason why such order should be made, that such taxes were a first lien upon the land. A lienholder, and party to the action, successfully resisted the motion.
It is now, for the first time, objected that the movers of the motion had no standing in court, and should not be allowed to prosecute this proceeding in error.
No objection of this kind was made on the record of the court below. And we think, in view of the following agreement of counsel, the defendant in error can not be heard on that question here:
“Agreement of parties. — Notice to apply to the supreme court for leave to file petition in error is waived, and, by agreemeut, the case is submitted with the request, if the court please, that the application of the law to the facts disclosed in the bill of exceptions, entries, and papers herewith attached, and ruling of court, may be settled and declared on the motion submitted, without further papers or proceedings. C. H. Baldwin,
Attorney for appellants. Gunckel & Nowe,
Boltin & Shauck,
Warren Monger,

Attorneys for contestants entitled to the funds remaining.”

*439 The law questions arising on the facts found by the court call for a construction of section 77 of the tax law (8. & C. 1465). The only portion of the section involved reads as follows: “ Or when any real estate shall be sold at judicial sale, or by administrators, executors, guardians, or trustees, the court shall order the taxes and penalties, and interest thereon, against such lands to be discharged out of the proceeds of such sale.”
The purchasers, Pritz & Baldwin, contend that the taxes charged against the land attached as a lien on and from the day preceding the second Monday in April, 1873, and should, for that reason, be discharged out of the proceeds of the judicial sale made by the master. The contestants in error claim, on the other hand, that taxes charged on the land upon .the duplicate, can not be lawfully discharged from the proceeds of the sale, unless due when the land is sold, and that no part of such tax was due until after the 20th day of December, 1873.
In the view we have taken of this statute, we can not adopt the theory of either party. Ve are seeking the legislative intent, and think it will be found in the language of the statute, in the bearing of other sections of the tax law upon this one, and in the purpose to be attained.
The taxes authorized to be paid out of the proceeds of the sale must bo a present charge “ against such lands,” and not taxes that may, at some time, become a charge against the land. On the day next preceding the second Monday of April, no part of the taxes on this land for 1873 was, either actually or constructively, “against such land.” Nor was it so on the 14th day of June, when the land was sold at judicial sale.
On the 15th day of July, annually, the auditor of state is required to notify the county auditor of each county of .the rates per centum to be levied in the county for state, school, and such other purposes as shall be prescribed by law ; and the county auditor is required to place the same on the county duplicate, in a separate column. (S. & O. 1456, sec. 430
*440 The county commissioners of each county are required, at their March or June session, annually, to ascertain the amount of tax to be raised for ordinary county purposes, public buildings, etc. (S. & O. 1458, sec. 51.) And the county auditor is required to assess the same against the lands, etc., of the county, and place the aggregate in a separate column on the duplicate.
The township trustees of the several townships are required, on or before the 15th day of June, annually, to ascertain and determine the amount of tax necessary to be raised in their respective townships for ordinary township purposes, etc., to be certified “ to the county auditor, who shall levy the same on the duplicate.” (S. & C. 1458,. sec. 52.)
The municipal code, section 469 (66 Ohio L. 259), directs and requires that the named authorities shall, on or before the first Monday in June, annually, certify to the county auditor, “the percentage by them levied on the real and personal property in the corporation returned on the grand levy.” And the auditor is required to place the same “ on the duplicate of taxes ” for such county, in the same manner as township taxes are now by law placed on the duplicate.”
Section 653 of the municipal code provides that, in case of special assessments, the auditor or clerk of the corporation, on or before the second Monday in September, annually, shall certify such assessment to the council, and, when confirmed by them, they are required to direct the clerk to certify the same to the county auditor, who is “ required to place the same on the tax duplicate.”
The foregoing citations from the statutes make it clear that the duplicate of taxes can not be completed earlier than the last of September or first of October, annually. Section 117 of the tax law (S. & C. 1477), requires the county auditor, “ on or before the first day of October, to deliver to the county treasurer the duplicate of taxes required by law to be made out.” It is manifest that no part of the taxes required to be levied and placed on the tax *441 duplicate, annually, can be placed there by “ the day preceding the second Monday in April.” Until such levy of taxes is, or can be, made on the duplicate, and legally placed against the land sold at judicial sale, no order can be rightfully made to discharge taxes out of the proceeds of a judicial sale. It must stand on the duplicate as a tax ascertained and charged against the land.
Several modes of collecting taxes are provided by law. By sec. 114 (S. & C. 1476), if the taxes are not paid by the times limited therein, the county treasurer is directed to collect them by distress. If unable to make the collection in that way, sec. 38 authorizes the treasurer to apply to the court of common pleas for an order requiring the person or corporation, etc., from whom, or from which the taxes are due, to show cause against the payment thereof. In default of doing so, the court will enter up a rule therefor, to have the force and effect of a judgment, to be enforced by attachment or execution. Sec. 1 (S. & S. 28), regulating delinquent sales, directs the treasurer to offer for sale on the third Tuesday of January, annually, each piece of delinquent'lancl and sell it to the person who will pay the charges thereon for the least quantity of the delinquent land. Sec. 77 points out a convenient mode of securing the payment in a special case, by providing that the taxes, charged against the land, when sold at judicial sale, etc., shall be discharged out of the proceeds of the sale.
The payment provided for by sec. 77 is in no way affected by see. 53, which provides, “ the lien of the state for taxes levied for all purposes, in each year, shall attach to all real property subject to such taxes, on the day preceding the second Monday of April, annually, etc.” The practical operation of'this rule as a lien, is to fix the lien of the state on a day in advance of any and all levies for general purposes. It was scarcely necessary to declare such a lien for the sole purpose of protecting the interests of the state, since under our general system of taxation, the payment of taxes legally assessed against real property could not be successfully resisted. It would follow the land like a cove *442 nant of title into the hands of all successive owners. The payment of state taxes, without this express lien, could only be jeopardized when the taxes levied on the land exceeds its value, and the owner is found to be bankrupt.
Sec. 53 is, however, in another respect, a wise provision, and avoids much litigation. It advises dealers in real property at what time the liability of the vendor for the taxes ceases, and that of the vendee begins. It makes certain that which otherwise would be uncertain. But sec. 53 in no way tends to limit, qualify or control sec. 77, which only directs the payment of the taxes charged against the land when sold at judicial sale, etc.
Defendant in error claims that, “ until the 20th day of December, annually, there is no tax due, and no debt or responsibility attaches to the owner, which he is then held to pay.” That the most favorable construction of sec. 77 to the plaintiffs in error is the enforcement of a lien when due.
We do not think defendant in error gives the true meaning of this section in regard to the time when the taxes become so due, in the sense under this statute, as to require an order to discharge them out of the proceeds of the sale.
On this question we can gain some light by a brief consideration of some other provisions of the tax laws. See. 113 (S. & O. 1476), requires the county auditor “to set down the amount of taxes charged against each entry in two columns, one half thereof, exclusive of road tax in each column.” In sec. 77 the controlling words are “ taxes against such lands,” and means as above, “ charged against.” By sec. 114, one-half is payable on or. before the 20th of December next, thereafter, and the remaining half on or before the 20th of June next, thereafter. If these semiannual payments are not satisfied on or before the occurrence of the semi-annual settlements, to be made by the treasurer, one in February and the other in August annually, a penalty is required to be added to the taxes charged against the delinquent.
The duplicates of taxes go into the possession of the *443 county treasurer on the 1st clay of October} each entry thereon charged with the full amount of the December and June taxes. They go into his possession for the purpose of collection. Immediately on the receipt of the duplicates sec. 59 (S. & C. 1594), requires him to notify the tax-payers, in the mode and manner therein named, of two things specially, viz : 1. The exact amount of tax levied on the duplicate for each purpose, and 2. On what day, he or his deputy will be at a place named in the notice, in the respective townships, to receive taxes. Ilis office at the county seat is open for that purpose until December 20.
The duplicate of taxes, delivered into the possession, of the county treasurer on the 1st day of October annually is his warrant of authority for collecting the several levies found against the entries thereon, together with penalties and interest that may accrue. From that date, each parcel of land entered upon the tax duplicate, is seized in law and charged with the payment of the levy against it. This is not changed, in any degree, by the fact that the owner is personally liable. In these respects a tax levy, on the land, does not differ in principle from a levy on land by the sheriff under an execution.
¥e think that from the 1st day of October, annually, the taxes levied against the land, are so far due and payable, that they should be discharged out of the proceeds arising from a judicial sale. From that date the county treasurer may lawfully receive the taxes, and give full acquittances therefor. True, the treasurer cannot enforce collection until after the 20th day of December, not for the reason that the taxes are not due, but because certain days of grace are given the owner in which to make payment before penalty will be added for his delinquency. If he fails to discharge the taxes levied against his land, within the days of grace, a penalty of twenty per cent, is added, and for continued neglect to make payment, in the course of time and the happening of certain events, not necessary here to detail, interest is also chargeable thereon.
The statutory provision under consideration, properly *444 construed, means, that taxes on land become due and payable from and after the first day of October, annually. When sold, after that date, at judicial sale, by an administrator, executor, guardian, or trustee, “ the court shall (if requested to do so) order the taxes and penalties, and the interest thereon against such lands’, to be discharged out of the proceeds of such sale.” This construction is, to some extent, supported by Ketchan v. Fitch et al., 13 Ohio St. 201, where it was held: “ The last clause of the 77th section of the tax law of 1859 (S. & C. 1465) provides only for the discharge of taxes and penalties standing unsatisfied on the duplicate.”

Judgment and order of the superior court affirmed.